**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Eugene Davis WILKINSON, Defendant-Appellant.**

**No. 71–2007.**

United States Court of Appeals,
Fifth Circuit.

May 15, 1972.

Rehearing Denied June 26, 1972.

Robert L. Templeton, Kolander, Templeton & Hamilton, Amarillo, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., W. E. Smith, John Truelson, Asst. U. S. Attys., Fort Worth, Tex., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Appellant Wilkinson was charged in eight counts with violations of the mail fraud statute, 18 U.S.C.A. § 1341.[1] It was alleged that he fraudulently obtained monies from Phillips Petroleum Company for work assertedly done at his sheet metal shop in Borger, Texas by sending false invoices for labor and material to Phillips, for which Phillips in return remitted payment by check through the mails. The most critical points which Wilkinson asserts here are that the trial court erred in (1) instructing the jury on good faith as a defense, on presumed intent and on the use of evidence on other counts; (2) refusing to suppress evidence discovered by a private investigator who worked at other times as an investigator for a state district attorney; (3) refusing to require greater pre-trial discovery; and (4) admitting documentary evidence. We find all assigned errors without merit and affirm.

The evidence against Wilkinson, construed in the light most favorable to the government,[2] consisted of the testimony of the following seven witnesses: a private investigator for Phillips who reported the contents of two conversations he had with Wilkinson, during which conversations Wilkinson said he "felt bad" about letting the fictitious invoices go through, that he guessed he had defrauded Phillips of "about twelve thousand dollars," and that he would "be happy to reimburse them"; a Phillips disbursement supervisor who testified regarding the company's receipt of the false invoices, and payment therefor by means of checks sent through the mails to Wilkinson's shop; a bank official who testified that the Phillips checks were endorsed and deposited to Wilkinson's bank account; and finally, four Phillips plant supervisors who indicated that specific items for which Phillips was billed were never received at the plant. Two of these supervisors testified concerning items other than those listed in the three counts under which Wilkinson was ultimately convicted. A single allegedly false invoice was introduced into evidence under each of those three counts, these being for a 50 inch pipe, a conveyor trough, and a discharge hopper. One supervisor testified concerning the non-receipt of the first two, and another supervisor as to the non-receipt of the third.

Four of the counts were dismissed with prejudice after the government chose not to introduce evidence thereon; a not guilty verdict was returned on one count; and Wilkinson was found guilty, after trial by jury, under the three re-

1. Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or au-
thorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

maining counts. A motion for new trial was denied, and this appeal followed.

## I. THE INSTRUCTIONS

Wilkinson's most urgently pressed specifications of error concern two objections he made below, and repeats now, to the trial judge's instructions to the jury. He first complains of the court's refusal to give his specifically requested instructions on the defendant's "good faith." Those requested instructions were:

> If you should find beyond a reasonable doubt from the evidence that any invoice was false as charged, but have a reasonable doubt whether the defendant in good faith believed the invoice to be correct, then you shall find the defendant not guilty.

> In connection with the preparation or in the transmission of any of the invoices in this case, you are instructed that good faith and an honest purpose on the part of the defendant is an absolute defense to the charge against him. Therefore, if you believe, or if you entertain a reasonable doubt upon the question of whether the invoices were prepared and transmitted in good faith by the defendant, then it is your duty to find the defendant not guilty.

The court's actual charge on this issue was:

> If you believe that any such invoice in question, and as shown by the direct evidence pertaining to Counts 4, 5, 6 and 8, were believed by the defendant, in good faith, and with honest purpose to be correct, then such invoice would not be one upon which a conviction could be based, and you would find the defendant not guilty on that particular count.

> Now, a fraudulent misrepresentation or representation, fraudulent representation, may be effected by conduct, by acts, as well as by words, by silence when there is duty to speak, by half truths calculated to mislead, or by statements made with a reckless indifference as to whether they are true or false.

> You are instructed that an essential element of the mail fraud offense charged is an intent to defraud, and this intent must be established by the evidence beyond a reasonable doubt.

> To act with intent to defraud means to act knowingly and with the specific intent to deceive for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self.

█ Wilkinson concedes, as he must, that it was not error that the judge refused to use the exact words he requested, as long as their substance was adequately covered. United States v. Knox, 458 F.2d 612 (5th Cir. 1972) [1972]; Posey v. United States, 416 F.2d 545, 555 (5th Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 965, 25 L.Ed.2d 127 (1970). The trouble for his point is that this necessary concession is too much, for we are satisfied that the charge fully and fairly informed the jury of the law applicable to the defense that the defendant acted in good faith. Inasmuch as the jurors were told that they must find beyond a reasonable doubt that Wilkinson acted with an intent to defraud, it was not necessary that they also be told that they must find beyond a reasonable doubt that he acted without good faith. New England Enterprises, Inc. v. United States, 400 F.2d 58 (1st Cir. 1968), cert. denied 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969).

█ The second portion of the charge Wilkinson contends was prejudicial concerns the instruction on specific intent. He objects specifically to the following language:

> The law provides a rebuttable presumption that a man intends the natural and probable consequences of his own acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent.

This language appeared in the following context:

> Intent may be proved by circumstantial evidence. Indeed, it rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eyewitness account of the state of mind with which the acts were done or omitted, but what a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged.
>
> The law provides a rebuttable presumption that every man intends the natural and probable consequences of his own acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud can be presumed when the unlawful act which results in loss or injury is proved to have been knowingly committed. It is a well settled rule that the intent can be presumed and inferred from the result of the action. If a man knows that the act he is about to commit will naturally or necessarily have the effect of injuring or defrauding another, and he voluntarily and intentionally does that act, he may be chargeable in law with the intent to injure or defraud.

Relying on our decision in Mann v. United States, 319 F.2d 404 (5th Cir. 1963), Wilkinson asserts that the objectionable instruction caused the burden of proof on the element of intent to be impermissibly shifted to him. The charge which *Mann* held to be reversible read:

> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the infer-ence that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused. Mann v. United States, *supra* at 407.

The court said of this instruction that:

> If the charge had ended when the jury was told that a person is presumed to intend the natural consequences of his own acts, when considered in the light of the charge as a whole, there would have been no error. When the words, "So unless the contrary appears from the evidence" were introduced, the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent. *Id.* at 409.

Although *Mann* specifically approved telling the jury that a man could be presumed to intend the natural and probable consequences of his own acts, Wilkinson asserts that the addition of the preamble, *"The law provides a rebuttable presumption that a man intends the natural and probable consequences . . .",* resulted in reversible error. For several reasons we cannot agree.

First, we note that the exact instruction challenged in this case was approved in Estes v. United States, 335 F.2d 609 (5th Cir. 1964), cert. denied 380 U.S. 926, 85 S.Ct. 884, 13 L.Ed. 814. The charge given there was found to be distinguishable from the *Mann* charge on three grounds: the "rebuttable presumption" language was not synonymous with the "so unless the contrary appears from the evidence" language; the *Estes* charge, read as a whole, contained sufficient language to cure any error that might have occurred in the specific words attacked; finally, the *Estes* charge was of ancient vintage and substantially similar to one approved by the Supreme Court in Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624 (1897).[3] Our consideration

---

3. It is open to question (one which we only raise, but need not answer) whether the charge given in *Agnew* would be approved by the Supreme Court or this

of the entire charge in this case convinces us that it made sufficiently clear to the jury that the burden was at all times upon the government to prove beyond a reasonable doubt Wilkinson's intent to defraud, and never upon him to prove the lack thereof. It contained the following careful, unmistakable instructions on this subject which we cannot disregard and are unwilling to assume the jury below disregarded:

> The law presumes the defendant in a criminal case to be innocent of crime, so the presumption of innocence alone is sufficient to acquit a defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt from all of the evidence in the case.
>
> Now, the burden of proving a defendant guilty beyond a reasonable doubt of every essential element of the crime charged is a burden that rests upon the Government. It is a burden that never shifts. The law does not require a defendant to prove his innocence, or to produce any evidence.

> \*　\*　\*　\*　\*　\*

> The law does not compel a defendant in a criminal case to take the witness stand and testify, and no presumption of guilt may be raised and no inference of any kind may be drawn from the failure of a defendant to testify.

> \*　\*　\*　\*　\*　\*

> A thing is done willfully if done voluntarily and purposely and with specific intent to do what the law forbids or with specific intent to fail to do what the law requires. That is to say, with evil motive or bad purpose, either to disobey or disregard the law. The word "willfully" is also employed to characterize a thing done without ground for believing it is lawful, or conduct marked by reckless disregard whether or not one has the right so to act.

> The word "knowingly" means with knowledge, that is, voluntarily and intentionally, and not because of mistake or accident or other innocent reason.
>
> The word "unlawfully" means something that is done in violation of or contrary to the law.
>
> Before you can find any defendant guilty, you must find from the evidence and beyond a reasonable doubt that he willfully and knowingly committed the crimes charged in the indictment.

> \*　\*　\*　\*　\*　\*

> Now, a fraudulent misrepresentation or representation, fraudulent representation, may be effected by conduct, by acts, as well as by words, by silence when there is duty to speak, by half truths calculated to mislead, or by statements made with a reckless indifference as to whether they are true or false.

> You are instructed that an essential element of the mail fraud offense charged is an intent to defraud, and this intent must be established by the evidence beyond a reasonable doubt.

> To act with intent to defraud means to act knowingly and with the specific intent to deceive for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self.

Finally, as set out earlier, almost immediately after the sentences Wilkinson challenges, the judge summarized his remarks concerning the possibility of presuming intent from the defendant's conduct, and clarified precisely what the jury had to find before any such presumption could be made:

> If a man knows that the act he is about to commit will naturally or necessarily have the effect of injuring or defrauding another, and he voluntarily and intentionally does that act, he

circuit today. However the nature and exact text of that charge, along with the Supreme Court's reasons for approv-

ing it, are highly instructive. See 165 U.S. at 49–52, 17 S.Ct. 235, 41 L.Ed. 624.

may be chargeable in law with the intent to injure or defraud.

■■ Second, even were we to agree that we should equate "The law provides a rebuttable presumption . . ." from the case at bar, with "So unless the contrary appears from the evidence . . ." from *Mann*, we would still find the charge before us not reversible error. *Mann* did not hold that the offensive sentences created incurable error. The holding there is broader:

> It is not our holding that every charge using the word "presumption" is reversible error. We do hold that it is error to give a charge in a criminal case of this nature, the overall effect of which is to place a burden upon the defendant to produce evidence to overcome a presumption of guilt.

Mann v. United States, *supra* at 410.

Indeed, that the *Mann* error can be cured we have made clear in two recent decisions. In Jenkins v. United States, 442 F.2d 429 (5th Cir. 1971), we held that the charge found reversible in *Mann* was cured by the following two instructions:

> Unless otherwise instructed, in determining the issue as to intent, the jury is entitled to consider any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence in the case which may aid in determination of state of mind.

> But the jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

4. In United States v. Driscoll, 454 F.2d 792 (5th Cir. 1972) which involved a prosecution for the interstate transportation of falsely made or forged securities, the judge shortly after giving the same charge on the question of intent which *Mann* condemned, instructed the jury that it was free to return a verdict of not guilty "even though the evidence points to his guilt." These two instructions taken together, particularly since the only disputed issue in the case was that of fraudulent intent, were found

United States v. Jenkins, *supra* at 438.

*Jenkins* was subsequently followed without elaboration in United States v. De-Simone, 452 F.2d 554 (5th Cir. 1971) [1971]:

> Defendants also contend that the court erred in its instructions on intent with the effect that a burden was wrongfully placed on the defendants to produce evidence and overcome a presumption of guilt. An instruction identical to that complained of was examined by this court in United States v. Jenkins, 5 Cir., 1971, 442 F.2d 429, 437–38. We there held that any harmful effect from this instruction was vitiated by a curative instruction. The case here is distinguished only by the fact that the curative instructions of the type in *Jenkins* were given four times instead of once. Accordingly, we find this assignment of error to be without merit. *Id.* at 556.

These cases announce no new rule of law. For it is well-established that the fairness and accuracy of a jury charge is to be read and tested as a whole, and not by a single isolated sentence or remark. United States v. Rouse, 425 F.2d 311 (5th Cir. 1971) [No. 71–1325, Dec. 22, 1971]; United States v. Green, 433 F.2d 946 (5th Cir. 1971); Gurleski v. United States, 405 F.2d 253 (5th Cir. 1968), cert. denied 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969). Only if the allegedly harmful instructions were either so overwhelmingly misleading as to be incurable,[4] or were not effectively cured by statements elsewhere in the charge[5] should a jury conviction be upset. That is not the case here.

sufficient to overwhelm the fairness and efficacy of the entire charge in that they fatally shifted the burden of proof.

5. Henderson v. United States, 425 F.2d 134 (5th Cir. 1970), and South v. United States, 412 F.2d 697 (5th Cir. 1969), involved reversals of criminal convictions based on charges in which the *Mann* instruction was given. As we observed in *Jenkins, supra* at 438, in each of these cases as well as in *Mann* itself, insufficient curative language was found.

Third, any decision as to whether asserted "burden-shifting" language is so prejudicial as to necessitate reversal must to some extent turn upon the type of case and nature of the evidence which has been presented to the jury. In Helms v. United States, 340 F.2d 15 (5th Cir. 1964), we distinguished the *Mann* case on the ground that *Mann* involved a situation where the entire case turned upon the defendant's mental state, i. e., whether he had deliberately and wilfully evaded certain income taxes, whereas in *Helms* "the contest center(ed) about objective conduct, . . . If the defendant actually instructed Borel to prepare the two sets of records and used the false tickets in making his income tax returns, there cannot be much doubt about his wilfulness or criminal intent." *Id.* at 18–19. We decline now, as we did in *Jenkins,* to place this case squarely in either a *Mann*-subjective or *Helms*-objective category. However, we do note that here the jurors were not reduced solely to presuming intent as they were in *Mann* and *Driscoll, supra n.* 4. Here, if they chose to accept it, they were presented with undisputed evidence that Wilkinson made admissions indicating he knew certain invoices were fraudulent, allowed the practice to continue, and that he was even able to estimate the amount which Phillips had been erroneously charged. Thus, the government's case did not rest upon mere implications of evil motive, but was supported by affirmative objective evidence of that particular element of the alleged crime. To paraphrase *Mann,* in a criminal case of this nature, the overall effect of the charge did not place a burden upon the defendant to produce evidence to overcome a presumption of guilt.

The fact that at this late date in the development of the law on proof of specific intent so lengthy a discussion of the problem is necessary here, highlights the need for more precise direction. We deem it unwise to let this case go on the books as another exception to the rationale of *Mann,* or worse, be understood that the instruction language used here should be repeated. The instruction given Wilkinson's jury, though not reversible under the circumstances here present, sails perilously close to the shoal of an erroneous shifting of the burden of proof.

An instruction which states:

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent.

is a common sense rule of circumstantial evidence which could not involve the hazard of less precise instructions. Other or further instructions that speak in terms of the law's rebuttable presumptions, or one which indicates that an intended inference completes the government's proof unless other evidence to the contrary is produced, can amount to plain error. Such instructions have been universally criticized.[6] Not only do such instructions carry the possibility of confusion, they are probably unnecessary. Surely the average juror already knows—though he may never have heard it articulated in legalistic jargon—that it would be reasonable to infer that a

---

6. For a collection of the numerous cases discussing this charge, with varying degrees of adverse commentary *see* McCarty v. United States, 409 F.2d 793, 800 (10th Cir. 1969).

man intends what he consciously does.[7] It is both unwise and pointless to muddle this reasonable notion and risk a violation of due process, Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), by hinting that a defendant may have to come forward with evidence on this issue, lest he be presumed a criminal.

 We hold today that the use of the *Estes'* "rebuttable presumption" language and *Mann's* "So unless the contrary appears" language, should be discontinued;[8] and where the nature of the case and the remaining portions of the charge do not alleviate the problem created, convictions based upon verdicts returned by juries so instructed will not be allowed to stand.

[11, 12] Wilkinson finally assaults the charge concerning evidence of invoices and checks other than those listed in the counts that ultimately went to the jury:

> The evidence presented by the Government and the defendant included certain exhibits not directly bearing on the truth or falsity of the allegations of Counts 4, 5, 6 and 8. You will not consider these exhibits and this evidence for any purpose except as bearing upon the question of intent or knowledge of the defendant as to the counts still in the case, or for the purpose of judging the credibility of the witnesses and the weight to be given to their testimony.

It is argued now that it was plain error for the judge not to tell the jurors that they could not consider evidence of such other false invoices until *after* they were satisfied beyond a reasonable doubt that the invoices actually referred to in Counts 4, 5, 6 and 8 were false. We are aware of no such instructional requirement. We agree that jurors face a difficult task in limiting the use of "other crime" evidence strictly to the issue of knowledge or intent, and that there can never be complete assurance that they have done so. United States v. Byrd, 352 F.2d 570, 574 (2d Cir. 1965). For this reason, this circuit has been diligent to prohibit the introduction of all such evidence save that which is "substantially relevant for some other purpose than to show a probability that (the accused) committed the crime on trial because he is a man of criminal character,"[9] *see* United States v. Johnson, 453 F.2d 1195 (5th Cir. 1972) [No. 71–1985, Jan. 11, 1972], and cases cited therein. But here, no argument is made that the other checks and invoices were inadmissible, nor is there any reason whatever to presume that the jury improperly considered them. We find the judge's instruction regarding them to have been both careful and proper.

## II. THE MOTION TO SUPPRESS

Prior to trial, Wilkinson made a motion to suppress the testimony of one David Kelley, a private investigator for Phillips, and the judge conducted a thorough hearing on the matter outside the jury's presence. Kelley had been alerted by Phillips to the possibility of fraudulent dealings on Wilkinson's part, and had been instructed by Phillips to interview him concerning the matter. Kelley subsequently had two conversations with Wilkinson, both taking place at Wilkin-

---

7. The plain common sense of the matter was best articulated by Mr. Justice Holmes in Ellis v. United States, 206 U.S. 246, 257, 27 S.Ct. 600, 51 L.Ed. 1047 (1906):
 > If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent. 27 S.Ct. at 602.

8. As indicated in a widely used instruction book in which the *Mann* condemned language appears, such language is an "invitation to reversal"; Mathes and Devitt, Federal Jury Practice and Instructions, § 10.06 (1968 Supp.) *See also* Devitt and Blackmar, Federal Jury Practice and Instructions, § 28.11 (1970 Ed.).

9. C. McCormick, Handbook of the Law of Evidence § 157 at 327 (1954).

son's place of business, at which time he identified himself as a private investigator for Phillips. Both the conversations occurred during regular business hours, and in the presence of Mrs. Wilkinson. During the course of these talks, as Kelley reported them at trial, the following devastating admissions were made by Wilkinson:

THE COURT: Just repeat the conversation.

A (By the witness): Mr. Wilkinson told me that Mr. Rodgers had sent through two or three invoices before he had any knowledge of this transaction. I asked him if he was speaking of the fictitious invoices and he said yes. I said, "Well, why did you let these others go through after you had knowledge?" And he said, "I don't know. That's why I felt bad about this whole thing."

Q Specifically, did you go into any questions and answers about amounts of money involved?

A Yes, we did. I had approximately thirty invoices with me. I asked Mr. Wilkinson about each one of them. He made an explanation on those that he could, and he stated that he did not wish to comment on the others.

Q Did he give—did he tell you any amount of money that was obtained?

A Yes, sir. I asked Mr. Wilkinson if he had any idea how much money he had beaten Phillips out of through these invoices.

Q What was his response?

A He stated, "There ain't no way of telling." He said, "I would guess about twelve thousand dollars, but I don't know. If they will come up with a figure, I'll be happy to reimburse them."

.The rub is that Kelley was not only an investigator for Phillips, but was also a criminal investigator for the district attorney's office in Potter County, Texas. He testified, however, that he was specially employed by Phillips to make the investigation of Wilkinson; at the time of his investigation and interviews with Wilkinson he was unaware of any desire on Phillips' part that Wilkinson be prosecuted; on the occasion of the interviews he had neither the intention nor the authority to arrest Wilkinson; he interviewed Wilkinson for no other reason than to gather information for Phillips; his conversations with Wilkinson were "friendly," and "casual," and Wilkinson was free at all times to stay or leave his office, to talk or not talk to Kelley; he was reimbursed by Phillips for all time spent on the investigation and interviews, and none of the information obtained was ever submitted to the district attorney's office.

 Without directly commenting upon whether Kelley had successfully doffed his "peace officer" hat and donned his "private citizen-investigator" hat at the time he elicited the incriminating statements from Wilkinson, the judge denied the motion to suppress the statements. He specifically held them to have been voluntarily made, and inasmuch as they were not made "in custody," they need not have been preceded by *Miranda* warnings. With commendable caution, he subsequently charged the jury that any statement made out of court could not be considered by them unless it was made voluntarily and intentionally beyond a reasonable doubt. We agree in all respects with the judge's rulings and conclusions; we now hold that neither "police" nor "custodial" interrogation of Wilkinson occurred; and we find no merit in any of the Fifth Amendment claims being urged.[10]

10. Though it was not introduced at trial, the record discloses that Kelley made a tape recording of portions of at least one of the conversations with Wilkinson. ment arguments based on this occur- Wilkinson makes several Fourth Amend- rence, which, even if "state action" on

Kelley's part were conceded, would be without merit. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed. 2d 453 (1971); United States v. Castillo, 449 F.2d 1300 (5th Cir. 1971) [1971].

**736**

### III. TRIAL PROCEEDINGS

■ Wilkinson next claims that it was error for the court not to grant certain motions for a bill of particulars and discovery. These motions were directed toward obtaining precise information as to which invoices, of the several for which each Phillips check listed in the indictment was sent in payment, the government intended to introduce at trial. No doubt Wilkinson's task would have been simplified by the granting of such motions. However, it does not appear from the record that his counsel's preparation for trial was so hampered by this ruling as to render him ineffective, United States v. Baggett, 455 F.2d 476 (5th Cir. 1972) [1972], nor that counsel ever made a motion for continuance. We conclude that no sufficient showing of prejudice or surprise has been made as to warrant our finding an abuse of discretion by the trial judge. United States v. Willoz, 449 F.2d 1321 (5th Cir. 1971) [1971]; United States v. Bearden, 423 F.2d 805, 809 (5th Cir. 1970).

■ It is also contended that a substantial set of Wilkinson's business records, files, and receipts should have been admitted into evidence for the purpose of showing the great volume of work he handled, and thus how likely it was a mistake might have been made on a few invoices. We find no error in the judge's conclusion that the confusion and distraction that might have been engendered by such evidence outweighed any probative value it might have had. Indeed, contrary to supposing that this evidence showed wherein a busy man might occasionally make honest mistakes, the jurors might well have surmised that this large volume of records merely furnished the necessary camouflage for fraud as to a few transactions.

■ Finally, Wilkinson objects to the admission of certain Phillips' records introduced for the purpose of showing that the allegedly fraudulent invoices were received by Phillips, and were paid for by company checks sent through the mails. All these records were reproductions of originals and were offered and received pursuant to the Federal Business Records Act. We are satisfied that they were clearly shown to have been made and kept in the regular course of business, that the entries in such records were routinely made within a reasonable time of the transaction involved, and that all records were satisfactorily identified. United States v. DeFrisco, 441 F.2d 137 (5th Cir. 1971) [1971]; United States v. Lipscomb, 435 F.2d 795 (5th Cir. 1970); Williams v. United States, 404 F.2d 1372 (5th Cir. 1968); Missouri Pacific R. R. Co. v. Austin, 292 F.2d 415, 422 (5th Cir. 1961).

We have carefully considered all other errors assigned and the record as it relates to each, including whether there was sufficient evidence to support the jury's verdict, and find them all to be without merit, both singly and cumulatively.

Affirmed.