**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ted BRISTOL, Defendant-Appellant.**

**No. 72–2815.**

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 1, 1973.

See also, D. C., 343 F.Supp. 1262.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

William M. Schultz, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Theo W. Pinson, III, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

Bristol, a Federal Deposit Insurance Corporation (FDIC) bank examiner, appeals from a judgment of conviction entered on a jury verdict of guilty of accepting a loan, in violation of 18 U.S.C. A. § 213,[1] from an officer and director of a state bank insured by the FDIC. Bristol seeks reversal of his conviction on the grounds that the indictment did not charge an offense under section 213 and that it was error not to require proof of a specific intent. In the alternative, he asks that his sentence be vacated in light of the suspended sentences given other defendants who pled guilty to a series of related crimes. Finding no reversible error in the indictment, the conviction, or the sentence, we affirm.

Bristol was an experienced bank examiner who, on several different occasions, had examined the Sharpstown State Bank, an institution insured by the FDIC. In early 1968 Bristol met with Sharp, whom he knew as the chairman of the board of that bank, and had a discussion concerning the possibility of purchasing stock in a company in which Sharp was contemplating acquiring a controlling interest. Several days later Bristol indicated a desire to buy 1000 shares and Sharp told him that financing would be no problem. No arrangements were made for the terms of any loan and no papers of any kind were prepared. Sharp subsequently drew a check for $9,787.50 on the account of Oak Forest Investment Company, a non-banking corporation he controlled, and made it payable to his own attorney who used the funds to purchase the stock for the benefit of Bristol. Sharp then drew a personal check for $10,000 and deposited it in the account of Oak Forest. Several months later Bristol talked with Sharp and mentioned that he had still not received the stock; shortly thereafter, however, he contacted Sharp to acknowledge that the stock had finally reached him. Based on this transaction, Bristol was indicted for knowingly accepting a loan from Sharp through Oak Forest.

Bristol first argues that the indictment was fatally defective because the loan, although perhaps *arranged* by Sharp, was not *made* or *granted* by him or his bank, but instead was made by a legitimate non-banking corporation. We disagree. While we recognize that 18 U.S.C.A. § 213 is a penal statute and must be strictly construed, we also note that this rule of construction:

does not require that such statute be strained or distorted in order to exclude conduct clearly intended to be within its scope. . . . Where the

---

1. 18 U.S.C.A. § 213 provides in pertinent part:

Whoever, being an examiner or assistant examiner of member banks of the Federal Reserve System or banks the deposits of which are insured by the Federal Deposit Insurance Corporation, . . . accepts a loan or gratuity from any bank, corporation, association or organization examined by him or from any person connected therewith, shall be fined not more than $5,000 or imprisoned not more than one year, or both; and may be fined a further sum equal to the money so loaned or gratuity given, and shall be disqualified from holding office as such examiner.

general purpose of legislation is manifest and subserved by giving words their ordinary meaning, the rule that criminal statutes are to be strictly construed is inapplicable. . . . Although provisions of criminal statutes should be confined to their literal terms, even penal provisions of statutes must be given fair meaning in accord with the evident intent of Congress. . . . Though penal laws are to be strictly construed, they are not to be construed so strictly as to defeat the obvious intention of Congress. . . . The rule of common sense must be applied to the construction of criminal statutes, the same as others.

Ryan v. United States, 9 Cir. 1960, 278 F.2d 836, 838 (citations omitted).

■ Congress, in passing section 213 and its companion section 212 (which prohibits bank officers from making a section 213 loan), intended to proscribe certain financial transactions which could lead to a bank examiner carrying out his duties with less than total, unbiased objectivity. With the intent of Congress evident from the face of the statute, a construction which would allow a bank officer to circumvent that intent simply by channeling a loan through a controlled shell corporation is untenable. Thus, we hold that the facts alleged in the indictment concerning the mechanics of the loan, if proved, would constitute a violation of 18 U.S.C.A. § 213.

Bristol next argues that the indictment was defective and that the district court's charge to the jury was erroneous because each failed to incorporate specific criminal intent among the elements of a violation of section 213. The indictment charged Bristol with doing the acts "knowingly" and the district court defined this general criminal intent to include voluntary, non-accidental acts; this intent was said to be ascertained by using the legal assumption that a person intends the natural consequences of his acts, irrespective of any knowledge concerning the criminal nature of those acts.

■ Section 213 itself gives us little guidance on the question of what level of intent is required because it makes no mention of any mens rea. Bristol, however, would have us read an "evil state of mind" requirement into the essential elements of the offense. This would be entirely inappropriate. Although the sanctions imposed under Anglo-American criminal jurisprudence are based on the concurrence of a criminal act and a criminal intent, a number of acts have been proscribed by federal statute and determined to be such significant threats to public safety or well-being that their mere non-accidental occurrence warrants the imposition of a penalty, even if the actor is ignorant of the illegality. See, e. g., United States v. Dotterweich, 1943, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (interstate delivery of adulterated drugs); United States v. Behrman, 1922, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619, and United States v. Balint, 1922, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (sale of drugs without written order); United States v. Weiler, 3 Cir. 1972, 458 F.2d 474, United States v. Quiroz, 9 Cir. 1971, 449 F.2d 583, and Braswell v. United States, 10 Cir. 1955, 224 F.2d 706, cert. denied, 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 752 (interstate transportation of firearms by a felon); United States v. Irwin, 2 Cir. 1965, 354 F.2d 192, cert. denied, 1966, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (certain kinds of bribery of public officials); Razete v. United States, 6 Cir. 1952, 199 F.2d 44, cert. denied, 344 U.S. 904, 73 S.Ct. 284, 97 L.Ed. 698 (graft). See also Roe v. United States, 5 Cir. 1961, 287 F.2d 435, cert. denied, 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29; United States v. De Witt, 5 Cir. 1959, 265 F.2d 393, 401 (Brown, J., dissenting), cert. denied, 361 U.S. 866, 80 S.Ct. 121, 4 L.Ed.2d 105.

The offense described in section 213 is analogous to those above. It is statutory in origin and has no common-law basis from which to bootstrap any specific

intent requirement. *Cf.* Morissette v. United States, 1952, 342 U.S. 246, 72 S. Ct. 240, 96 L.Ed. 288. The public's need for disinterested bank examiners makes acts which frustrate that need *malum prohibitum* and this obviates the necessity for any specific intent.

 With the standard established that a defendant must knowingly do the acts which constitute a violation of section 213, we must decide whether there was any substantial evidence upon which the jury could base a finding that Bristol knew the source of the loan. The court correctly made this an element of the offense in the charge to the jury[2] and the recitation of the facts earlier in this opinion, coupled with Bristol's payments of $6,000 to Sharp and $20,292.15 to Oak Forest after selling the stock, provides ample evidence for the jury's concluding that Bristol knew that the loan had come from Sharp. Glasser v. United States, 1942, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680; Gordon v. United States, 5 Cir. 1971, 438 F.2d 858, cert. denied, 404 U.S. 828, 92 S.Ct. 139, 30 L. Ed.2d 56.

 In conjunction with Bristol's main attack on the portion of the charge to the jury dealing with general criminal intent, he asserts two collateral arguments. The first is that his good faith belief that he was not violating the law (a belief that was allegedly reinforced by some advice of counsel) should be a defense to the charge. Even if his attorney had given advice after learning all the relevant facts, which the record indicates was not the case, Bristol's reliance thereon and good faith belief in his innocence would be no defense to a *malum prohibitum* crime that does not require a specific intent. *See* Shushan v. United States, 5 Cir. 1941, 117 F.2d 110, cert. denied, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531. *See also* United States v. Wood, 9 Cir. 1971, 446 F.2d 505; United States v. Custer Channel Wing Corp., 4 Cir. 1967, 376 F.2d 675, cert. denied, 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119; United States v. Hill, D.Conn.1969, 298 F.Supp. 1221; Note, Reliance on Advice of Counsel, 70 Yale L.J. 978 (1961).

 Bristol's second collateral argument is that the portion of the charge which pertains to the legal assumption that a person intends the natural consequences of his acts, improperly placed the burden of proof on him.[3] He cites

---

2. The other elements of the offense—that Bristol was a bank examiner and that he had examined the bank in question— were not contested.

3. The portion of the charge to which Bristol objects is reproduced and italicized below in the appropriate context:

 To constitute a crime there must be the joint operation of two essential elements, an act forbidden by law and an intent to do the act.

 Before a defendant may be found guilty of a crime the prosecution must establish beyond a reasonable doubt that under the statute defined in these instructions defendant was forbidden to do the act charged in the indictment, and that he knowingly and intentionally committed the act.

 Now, as to the word "knowingly." The word "knowingly" as used in the indictment is in essence a general criminal intent requirement and means that the act of defendant was done or committed voluntarily and purposely, and not because of mistake, accident or other innocent reason. Knowledge may be proven by defendant's conduct, and by all the facts and circumstances surrounding the case. No person can intentionally avoid knowledge by closing his eyes to facts which should prompt him to investigate.

 *In determining defendant's intention the law assumes that every person intends the natural consequences of his voluntary acts.* Therefore, the general intent required to be proven as an element of the crime is inferred from defendant's voluntary commission of the act forbidden by law, and it is not necessary to establish that defendant knew that his act was a violation of law.

 Ignorance of the law is no defense. It is not necessary for the prosecution to prove knowledge of the accused that particular act or failure to act is a violation of law. Unless the evidence in the case leads the jury to a different or contrary conclusion, the presumption is that every person knows what the law forbids, and what the law requires to be done.

as support for this argument the case of Mann v. United States, 5 Cir. 1963, 319 F.2d 404, cert. denied, 1964, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474. The citation of *Mann*, however, only discloses the tip of the iceberg of this Circuit's decisions on the question of "burden-shifting" instructions and the various forms those instructions have taken since 1963.[4] *See, e. g.,* United States v. Wilkinson, 5 Cir. 1972, 460 F.2d 725; United States v. Driscoll, 5 Cir. 1972, 454 F.2d 792; United States v. De-Simone, 5 Cir. 1971, 452 F.2d 554, cert. denied, 1972, 406 U.S. 959, 92 S.Ct. 2067, 32 L.Ed.2d 346; United States v. Jenkins, 5 Cir. 1971, 442 F.2d 429; Henderson v. United States, 5 Cir. 1970, 425 F.2d 134; South v. United States, 5 Cir. 1969, 412 F.2d 697; Nagell v. United States, 5 Cir. 1968, 392 F.2d 934; Helms v. United States, 5 Cir. 1964, 340 F.2d 15, cert. denied, 1965, 382 U.S. 814, 86 S.Ct. 33, 15 L.Ed.2d 62; Estes v. United States, 5 Cir. 1964, 335 F.2d 609, cert. denied, 1965, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559.

The posture of this case, however, makes it unnecessary for us to place the district court's hybrid charge somewhere within this imposing block of precedents. Every case that has struggled with this slippery problem has in-volved a crime which required a finding of *specific intent* before a verdict of guilty could be returned.[5] The crime described in 18 U.S.C.A. § 213 does not require such a finding. Because the district court charged the jury correctly on the knowledge requirement and defined that term for them, the subsequent discussion of intention could only be viewed as amplifying the earlier charge, emphasizing the voluntary nature of the acts involved. As we stated in *Wilkinson,* our decision "must to some extent turn upon the type of case and nature of the evidence which has been presented to the jury." 460 F.2d at 733. Here the facts were not in substantial dispute. Furthermore Bristol's primary defensive efforts were directed at developing a legal argument later rejected by the court and establishing defenses that were irrelevant in light of the rejection of his legal argument. Thus the jury's task centered on whether Bristol acted "knowingly" in obtaining his loan. Because that term was properly defined in the charge to the jury and because the portion objected to did not contradict or otherwise fatally infect the remainder of the jury instructions, we find no reversible error in the charge.[6]

Bristol's final argument is that his sentence should be vacated because

4. This Circuit, while perhaps alone in its complex resolution of this problem, has been joined by many other courts who have considered it since 1963. *See, e. g.,* United States v. Moore, 1970, 140 U.S.App.D.C. 309, 435 F.2d 113, cert. denied, 1971, 402 U.S. 906, 91 S.Ct. 1376, 28 L.Ed.2d 647; McCarty v. United States, 10 Cir. 1969, 409 F.2d 793, cert. denied, 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87; United States v. Tijerina, 10 Cir. 1969, 407 F.2d 349, cert. denied, 396 U.S. 843, 90 S.Ct. 76, 24 L.Ed.2d 93; United States v. Wilkins, 4 Cir. 1967, 385 F.2d 465, cert. denied, 1968, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1144; Moore v. United States, 8 Cir. 1967, 375 F.2d 877, cert. denied, 389 U.S. 844, 88 S.Ct. 92, 19 L.Ed.2d 110; United States v. Barash, 2 Cir. 1966, 365 F.2d 395; United States v. Releford, 6 Cir. 1965, 352 F.2d 36, cert. denied, 1966, 382 U.S. 984, 86 S.Ct. 562, 15 L.Ed.2d 473;

United States v. Denton, 6 Cir. 1964, 336 F.2d 785; Sherwin v. United States, 9 Cir. 1963, 320 F.2d 137, cert. denied, 1964, 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420. See also 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, § 13.06 (1970, 1972 Supp.).

5. The specific intent charge has been thoroughly analyzed in United States v. Wilkinson, *supra,* 460 F.2d at 729–734. *See* United States v. Industrial Laboratories Co., 10 Cir. 1972, 456 F.2d 908.

6. We feel compelled to add that our affirmance does not indicate approval without reservation of the exact language reproduced in footnote 2. Instead we re-iterate our desire to see the use of such language discontinued, particularly in cases with a specific intent element present. See *Wilkinson, supra,* 460 F.2d at 734.

other federal and state defendants involved in related crimes received suspended sentences and probation after entering guilty pleas. In this case, however, after standing trial, Bristol was sentenced to a period of one year, six months to be served in the custody of the attorney general and the balance of which was suspended with three-years probation. This sentence is within the statutory limits and Bristol has demonstrated no judicial misconduct or abuse of judicial discretion that would bring him within the scope of either United States v. Wiley, 7 Cir. 1960, 278 F.2d 500, or Thomas v. United States, 5 Cir. 1966, 368 F.2d 941. *See* United States v. Moore, 5 Cir. 1970, 427 F.2d 38, cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L. Ed.2d 384; United States v. Weiner, 5 Cir. 1969, 418 F.2d 849. Consequently, we affirm the sentence imposed by the district court.

Affirmed.