June 21, 1977

## 77–39 MEMORANDUM OPINION FOR THE UNITED STATES ATTORNEY, JUDICIAL DISTRICT OF MAINE

### Borrowing Practices of Bank Examiners

Our opinion has been requested whether the provisions of 18 U.S.C. §§ 212–13 are violated if (1) the spouse of a bank examiner borrows money from a federally insured State bank, or (2) a bank examiner borrows money from such a bank where the State superintendent of banking has first revoked the examiner's authority to examine that bank. For the reasons that follow, it is our conclusion that no violation of 18 U.S.C. §§ 212–13 would be presented by the second approach; the first approach, however, poses problems that we believe are best avoided.

We shall first discuss the problems presented under 18 U.S.C. §§ 212–13 by a loan to the spouse of a bank examiner. Section 212 prohibits bank officers of any federally insured bank, under penalty of criminal sanction, from making or granting "any loan or gratuity . . . to any examiner or assistant examiner who examines or has authority to examine such bank." Section 213 provides for a corresponding prohibition on bank examiners from accepting "a loan or gratuity from any bank . . . examined by him or from any person connected therewith." It is quite apparent that neither of these provisions explicitly imposes any restrictions on the spouses of bank examiners. According to the general rule requiring strict construction of criminal statutes, the activities of a spouse would not normally come within the provisions of such laws.

However, we question whether this result will always follow. Our problem here stems from the decision in *United States* v. *Bristol,* 343 F. Supp. 1262 (S.D. Tex. 1972), *affirmed,* 473 F. 2d 439 (5th Cir. 1973). In that case it was held that a bank officer's loan funneled through an entity not subject to 18 U.S.C. 213, nevertheless came within the provisions of that statute. The courts reasoned that, even though criminal statutes must be strictly construed, § 213 should not be interpreted so as to depart from the evident congressional intent "to proscribe certain financial transactions which could lead to a bank examiner

carrying out his duties with less than total, unbiased objectivity." 473 F. 2d at 442.

We believe that this same reasoning would apply to at least some loans made to spouses of bank examiners. In the most egregious case, the loan to the spouse may in actuality be a loan to the bank examiner. Even if the transaction did not partake of this type of fraudulent behavior, it seems to us that, in certain circumstances, a loan to the spouse of a bank examiner could easily cause that examiner to perform his or her duties with respect to the particular bank in less than an unbiased and objective manner. In both sorts of situations the courts might then adopt the approach in *Bristol* and apply 18 U.S.C. §§ 212-13 to such loans.

The Federal Deposit Insurance Corporation apparently shares this view, for it has laid down criteria that must be met before the spouse of an examiner may borrow from an uninsured bank. These criteria generally mandate that the loan be based entirely on the spouse's credit, be supported by the spouse's own income or assets, and be employed for the spouse's own personal use. While these criteria largely alleviate our concerns here, they do not entirely eliminate them. For example, it is possible that the borrowed funds could allow the examiner's income to be used for purposes for which they might not otherwise be available. A default on the loan, although theoretically enforceable only against the spouse, could also bear on the examiner's standard of living and might even end up being paid out of the examiner's own funds.

It thus seems that a bank examiner cannot be entirely insulated from the effects of his spouse's loan transactions in every circumstance. We therefore cannot conclude that the purposes underlying 18 U.S.C. §§ 212-13 would not encompass a loan to a bank examiner's spouse in every situation, and that the courts would not follow *Bristol* and apply those statutes to such situations. While this may not often occur, we do believe that this prospect poses significant problems and precludes the view that loans to the spouse of a bank examiner will never violate 18 U.S.C. §§ 212-13. We would therefore recommend that this practice be followed, if at all, with extreme caution.

We have no problem, however, with the second alternative of revoking a bank examiner's authority to examine particular banks and allowing him to obtain loans from those banks.[1] We do not believe it appropriate for this Office to comment on the authority of the superintendent of banking to take this action; this is a question of State law and should therefore be decided by the State authorities. However, assuming that this authority exists, we believe that the revocation of an examiner's authority to examine certain banks would meet the purposes served by 18 U.S.C. §§ 212-13. The examiner would, then, never be in

---

[1] We note here that 18 U.S.C. § 213 does not expressly refer to those banks that the examiner has authority to examine, but only includes banks "examined" by the examiner. No such limitation appears in 18 U.S.C. § 212, however, and so the question of the examiner's authority is at least relevant to the bank officers' liability.

a position of having dealings with a bank he could examine, and this would serve to guarantee the examiner's unbiased objectivity in the performance of his duties. We would caution, however, that 18 U.S.C. § 213 would still prohibit any dealings with a bank that the examiner has already "examined."

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*