# Federal Reserve Board Policy on Bank Examiner Borrowing

The Federal Reserve Board may change its administrative policy relating to borrowing by bank examiners, to allow bank examiners to borrow or hold credit cards from lending institutions affiliated with banks or bank holding companies which they are authorized to examine. The change proposed would not result in a violation of 18 U.S.C. §§ 212 and 213.

August 25, 1982

## MEMORANDUM OPINION FOR THE SECRETARY OF THE BOARD, FEDERAL RESERVE BOARD

This responds to your request for our views on a proposed change in Federal Reserve Board policy pertaining to bank examiner borrowing. The proposed change would permit bank examiners employed by the Board to borrow or hold credit cards from lending institutions affiliated with banks or bank holding companies which they are authorized to examine. Your question is whether such a policy change can be accomplished consistent with the conflict of interest laws relating to bank examiner borrowing. We conclude that it can.

At issue is the scope of the prohibition contained in 18 U.S.C. §§ 212 and 213. Section 212 prohibits an officer, director, or employee of a bank which is a member of the Federal Reserve System or insured by the Federal Deposit Insurance Corporation (FDIC) from making a loan to an examiner who "examines or has authority to examine" the bank. Section 213 complements § 212 by prohibiting a bank examiner from accepting a loan from "any bank, corporation, association or organization examined by him or from any person connected herewith . . . ."[1]

---

[1] Sections 212 and 213 provide in relevant part as follows.

§ 212. *Offer of loan or gratuity to bank examiner*

Whoever, being an officer, director or employee of a bank which is a member of the Federal Reserve System or the deposits of which are insured by the Federal Deposit Insurance Corporation, or of any National Agricultural Credit Corporation, or of any land bank, Federal land bank association or other institution subject to examination by a farm credit examiner, or of any small business investment company, makes or grants any loan or gratuity, to any examiner or assistant examiner who examines or has authority to examine such bank, corporation, or institution, shall be fined . . or imprisoned . . or both . .

§ 213. *Acceptance of loan or gratuity by bank examiner*

Whoever, being an examiner or assistant examiner of member banks of the Federal Reserve System or banks the deposits of which are insured by the Federal Deposit Insurance Corporation, or a farm credit examiner or examiner of National Agricultural Credit Corporations, or an examiner of small business investment companies, accepts a loan or gratuity from any bank, corporation, association or organization examined by him or from any person connected herewith, shall be fined . . or imprisoned . . or both . . .

509

The rule against examiner borrowing contained in §§ 212 and 213 was first promulgated as § 22 of the Federal Reserve Act of 1913, 38 Stat. 272, and was intended to "proscribe certain financial transactions which could lead to a bank examiner carrying out his duties with less than total, unbiased objectivity." *United States* v. *Bristol,* 473 F.2d 439, 442 (5th Cir. 1973). *See also* H.R. Rep. No. 69, 63d Cong., 1st Sess. (1913). As a conflict of interest rule, it has been interpreted by the major federal agencies responsible for bank examination to prohibit *all* credit transactions between banks and the federal officials who have authority to examine their affairs, whether or not they are corrupt.[2] There is no provision in the statute or its legislative history which evinces an intent to exempt any particular kind of credit relationship, and the rule against examiner borrowing in §§ 212 and 213 has been applied to prohibit credit effected through credit cards, as well as direct loans.

Prior to 1979, bank examiners employed by the Federal Reserve Board were forbidden by Board policy to borrow or obtain credit from any bank which the Board was authorized by law to examine, including all member banks and their affiliates. *See* 12 U.S.C. §§ 248(a), 325, 338, and 483. In that year, however, recognizing the severe restrictions this policy placed on its examiners' ability to obtain ordinary credit, the Board limited the authority of its examination personnel to state member banks, bank holding companies, and their non-bank affiliates. Primary federal authority for examining national banks and state non-member banks affiliated with member banks was ceded to the Comptroller of the Currency and the FDIC, respectively, and Federal Reserve examiners were left with no authority to audit such banks until and unless it was specifically granted on an *ad hoc* basis by the Board. As a result, since 1979 Federal Reserve examiners have been permitted to borrow and hold credit cards from national and state nonmember banks.[3]

Under the Federal Reserve Board's 1979 policy on borrowing, bank examiners employed by the Board could obtain credit from national banks and state nonmember banks even if those banks were "affiliated" with state member banks and holding companies which Federal Reserve examiners were authorized to audit.[4] However, in this event, the examiner was not permitted to participate in the

---

[2] *See, e.g.,* 12 C.F.R. § 336.735-11(b)(5)(i) (1981) (FDIC examiners may not accept any extension of credit from insured banks they examine); Administrative Circular 53 (Revised) supplementing 31 C.F.R. § 0 735 (Comptroller of the Currency examiners may not accept loan or extension of credit of any kind from national banks); Federal Reserve Board Ethics Manual, Part D (examiners of Federal Reserve Board may not borrow from or hold credit cards issued by banks they are authorized to examine)

[3] This change in Federal Reserve Board policy was approved as an interpretation of 18 U.S.C. §§ 212 and 213 by the Criminal Division of this Department *See* letter of Feb. 7, 1979 to Mr. J. Charles Partee, Member of the Board of Governors of the Federal Reserve. Several years earlier, the FDIC had taken similar steps to limit the authority of its examination personnel to enable them to borrow from national banks and state member banks, also with the Criminal Division's approval. *See* letter of June 27, 1973 to Mr. Frank Wille, Chairman, FDIC. Because bank examiners employed by the Comptroller of the Currency have statutory authority to examine only national banks and their affiliates, *see* 12 U.S.C. § 481, they have never been subject to the same constraints on their ability to obtain credit as have the examiners of the Federal Reserve and FDIC

[4] As defined in applicable statutory provisions, a bank "affiliate" includes any corporation, business trust, or association (1) of which a bank owns or controls a majority of the voting shares; (2) of which control is held, directly or indirectly, by the shareholders of the bank; (3) a majority of whose directors are also directors of the bank; or (4) which owns or controls, directly or indirectly, a majority of the shares of capital stock of the bank. *See* 12 U.S.C. § 221a(b). *See also* 12 U.S.C. §§ 371c and 1828(j) An "affiliate" of a bank thus includes the holding company of which the bank is a subsidiary, and any other subsidiary of that holding company

examination of the affiliated bank or holding company. With this restriction, the Board sought to ensure that none of its examiners would be involved in a credit relationship with an affiliate of an institution he was actually responsible for examining.[5] The change which the Board now proposes to make in its policy would remove this restriction to permit one of its examiners to audit a state member bank or holding company notwithstanding any current credit relationship he may have with an affiliate of that bank or holding company.

In 1980, advising with respect to a substantially similar change proposed by the FDIC, this Office took the position that § 213 does not prevent a bank examiner from accepting a loan from an institution affiliated with a bank which he examines, so long as the loan is not approved by a "person connected with" the latter institution.[6] Our review of the legislative history of § 213 indicated that Congress intended to do no more than bar a bank examiner from accepting a loan from a bank, or an *individual* connected with a bank he was responsible for examining; its prohibition was not intended to extend to loans from affiliated institutions however tenuous their relationship with the bank subject to examination. We have reexamined that position, and we believe it to be the correct interpretation of § 213. Accordingly, we do not believe that § 213 poses an obstacle to the policy change now proposed by the Federal Reserve, which would bring its policy on examiner borrowing into line with that of the FDIC.[7] And, while our earlier opinion focused on § 213, we reach the same conclusion with respect to the complementary provisions of § 212. Section 212 prohibits loans by "an officer, director or employee of a bank" to an examiner who "has authority to examine such bank." The gravamen of the offense covered by § 212, like that covered by § 213, is the approval of credit for a bank examiner by a person connected with the same bank which the examiner has authority to audit. If bank officials of the lending institution are not also "officers, directors, or employees" of the bank or holding company subject to the examiner's audit authority, there is no opportunity for the conflict of interest sought to be avoided by §§ 212 and 213 to arise.[8]

ROBERT B. SHANKS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[5] Attempting to achieve the same end by a different route, the analogous FDIC policy approved by the Criminal Division in 1973 provided that FDIC examiners could not borrow from an affiliate of a bank within the ambit of their examination authority

[6] *See* July 10, 1980, Memorandum for the Executive Secretary, FDIC, "Proposed Amendments to Regulations of Federal Deposit Insurance Corporation (FDIC) Relating to Bank Loans to Examiners."

[7] *See also* Administrative Circular 53 (Revised), supplementing 31 C.F.R. § 0.735, which articulates a substantially similar credit policy for examiners employed by the Comptroller of the Currency

[8] We do not suggest that §§ 212 and 213 would permit an examiner to borrow or accept credit from an affiliate in a case where the relationship between the institution being examined and the affiliated lending institution is such as to suggest common control, or where the two entities have a common majority of officers or directors. In such a case, a loan from an affiliate might be tantamount to a loan from the bank being examined, thus giving rise to the very conflict of interest which §§ 212 and 213 were intended to prevent. We understand from discussions with members of your staff that the structure of the banking industry is such as to make this eventuality highly unlikely *Cf. United States v. Bristol, supra,* in which the court held that a bank officer's loan to an examiner violated §§ 212 and 213 even though it was funneled through an entity which the examiner had no authority to examine.

511