# Clarification of Prior Opinion Regarding Borrowing by Bank Examiners

18 U.S.C. § 213, which prohibits federal bank examiners from borrowing from Federal Reserve member banks or other entities subject to examination by them, does not prohibit such examiners from receiving loans or credit from affiliates of covered banks merely because such affiliates are under "common control" with the bank or because the covered bank and the affiliate have a common majority of corporate officers or directors.

An examiner would be prohibited from borrowing from such an affiliated entity, where the affiliate is serving as a conduit or "front" for the implementation of a loan that is actually extended due to the direction, instigation, or influence of the affiliated member bank or person connected therewith

December 20, 1993

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
BOARD OF GOVERNORS
FEDERAL RESERVE SYSTEM

This responds to your request that we clarify an aspect of an opinion previously issued by this Office respecting 18 U.S.C. § 213, which prohibits a bank examiner from borrowing from any Federal Reserve member bank or other covered entity that he examines, or any person connected therewith. *See Federal Reserve Board Policy on Bank Examiner Borrowing*, 6 Op. O.L.C. 509 (1982) ("1982 Opinion"). Specifically, you have asked us whether footnote 8 from that opinion should be construed to mean that 18 U.S.C. § 213 prohibits bank examiners from receiving loans or credit from affiliates of member banks that they have examined in all cases where such affiliates are under "common control" with the bank, or where the two entities have a common majority of corporate officers or directors. We conclude that such a construction is not required by the statute, except where the affiliated bank is serving as a conduit or "front" for the implementation of a loan that is actually being extended due to the direction, instigation, or influence of the member bank or person connected therewith.

## I. BACKGROUND

The criminal statute giving rise to the issue presented is 18 U.S.C. § 213, which provides as follows:[1]

---

[1] Also pertinent is 18 U S C § 212, which prohibits "officer[s], director[s] or employee[s]" of Federal Reserve member banks and certain other covered institutions (e g , banks insured by the Federal Deposit Insurance Corporation) that are subject to examination by federal examiners from making or granting any loans or gratuities to any examiner who is authorized to examine the covered bank or institution

168

> Whoever, being an examiner or assistant examiner of [a federal banking agency], accepts a loan or gratuity from any bank, branch, agency, corporation, association or organization examined by him *or from any person connected herewith*, shall be fined . . . or imprisoned . . . .

(emphasis added).

In a memorandum prepared for the Federal Deposit Insurance Corporation ("FDIC") in 1980, this Office opined as follows concerning certain proposed amendments to FDIC regulations that would permit FDIC examiners to make use of a limited amount of credit extended via credit cards by banks that are affiliates of banks that they examine:

> [T]his exposition of the background of 18 U.S.C. § 213 establishes that its phrase "from any person connected therewith" includes only individuals and, insofar as the examiners of your agency are concerned, is limited to an officer, director or employee of an insured State nonmember bank. Accordingly, we see no legal objection to the FDIC's amending its regulations to allow an examiner to receive credit from a national or State member bank even though it is an affiliate of an insured State nonmember bank.

Memorandum for Hoyle L. Robinson, Executive Secretary, FDIC, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Proposed Amendments to Regulations of Federal Deposit Insurance Corporation Relating to Bank Loans to Examiners - 18 U.S.C. §§ 212-213* at 4 (July 10, 1980) ("1980 Opinion").

In response to a request made by the Federal Reserve Board in 1982, this Office issued a further opinion that a policy allowing examiners to obtain loans or credit cards from affiliates of member banks and bank holding companies they are authorized to examine would not violate 18 U.S.C. § 213. Referring back to the 1980 opinion prepared for the FDIC, the 1982 Opinion stated:

> Our review of the legislative history of § 213 indicated that Congress intended to do no more than bar a bank examiner from accepting a loan from a bank, or an *individual* connected with a bank he was responsible for examining; its prohibition was not intended to extend to loans from affiliated institutions however tenuous their relationship with the bank subject to examination. We have reexamined that position, and we believe it to be the correct interpretation of § 213.

6 Op. O.L.C. at 511.

However, the 1982 Opinion also contained the following footnote, which occasions the concern giving rise to your inquiry:

> We do not suggest that §§ 212 and 213 would permit an examiner to borrow or accept credit from an affiliate in a case where the relationship between the institution being examined and the affiliated lending institution is such as to suggest common control, or where the two entities have a common majority of officers or directors. In such a case, a loan from an affiliate might be tantamount to a loan from the bank being examined, thus giving rise to the very conflict of interest which §§ 212 and 213 were intended to prevent.

*Id.* at 511 n.8.

You have stated that this footnote is inconsistent with the general conclusion of the 1982 Opinion and suggested that the interpretation it expresses would restrict borrowing by Federal Reserve examiners in a manner not required by the statute itself. Pointing out that such a construction would impose unfair restrictions on covered examiners in their efforts to obtain credit card accounts, mortgages, and other commonplace forms of credit, you have asked us to clarify the uncertainty created by the language of the questioned footnote.

## II. ANALYSIS

The analysis in both the 1980 and 1982 Opinions adequately establishes that (1) the phrase "from any person connected herewith" used in 18 U.S.C. § 213 is limited to *natural persons* and does not encompass corporations or other legal entities affiliated with a member bank; and (2) as a general rule, that phrase does not extend § 213's prohibition to loans extended by corporate affiliates of covered banks to examiners with authority to examine such banks.

The uncertainty created by footnote 8 in the 1982 Opinion stems from its attempt to convey that, where an examiner accepts a loan from an entity that has a very close relationship with a covered bank, there is some potential for "sham" transactions concealing the reality of a loan that was actually extended at the instigation or direction of the covered bank. As you point out, however, footnote 8 may also be read to suggest that §§ 212 and 213 implicitly prohibit examiners from borrowing or accepting credit from an affiliate of a member bank *whenever* their relationship "is such as to suggest common control, or where the two entities have a common majority of officers or directors." 6 Op. O.L.C. at 511 n.8. We do not believe that such a construction is warranted and, to the extent that footnote 8 implies such a construction, it does not reflect the legal opinion of this Office.[2]

---

[2] As your letter requesting this opinion points out, many "affiliates" of member banks are by definition under "common control" with such banks. *See* 12 U.S C § 1841(k). Therefore, an interpretation that any affiliate that is under "common control" with a member bank is *per se* subject to § 213's prohibition is difficult to reconcile with the 1982 Opinion's main conclusion that § 213 does not generally prohibit examiners of covered banks from receiving loans or credit from affiliates of those banks

To resolve any further uncertainty on this issue, it is not the opinion of this Office that examiners are prohibited from borrowing from an affiliate of a covered bank *solely because* that affiliate is under common control with the covered bank or because it shares a common majority of officers or board members with it.[3] As long as the affiliate extending credit to the examiner is not extending that credit *due to the direction, instigation, or influence* of the covered bank, the transaction is not subject to the prohibition of 18 U.S.C. §§ 212 and 213.[4] We believe that the prohibitions of §§ 212 and 213 *would apply*, however, in a case where an affiliate of a covered bank extended a loan to an examiner of that bank *on behalf of* that bank, or acted as a conduit to disguise the true source of a loan to the examiner that has been authorized or instigated by the covered bank. *See United States v. Bristol*, 473 F.2d 439, 442 (5th Cir. 1973) ("[A] construction of [§ 213] which would allow a bank officer to circumvent [§ 213's] intent simply by channeling a loan through a *controlled* shell corporation is untenable.") (emphasis added).

The key issue in these cases is whether the affiliated bank is acting as an *alter ego*, agent, or conduit for a member bank or a covered "person" in circumstances where it is actually the latter that has authorized, caused, or brought about a loan or other extension of credit to the examiner. In such instances, we believe that §§ 212 and 213 would apply to the transaction — not because the affiliate is under common control or management with the member bank, but because the transaction is in reality a loan or extension of credit initiated by the member bank rather than by the affiliate. *See United States v. Bristol*, 473 F.2d at 442. However, where the affiliate has independently authorized the loan or extension of credit to the examiner, and the transaction does not result from the direction, control, or influence of the covered bank or other covered "person," the transaction is not subject to the prohibitions of the statute even though the affiliate is under common control, or has an overlapping majority of officers or directors, with the member bank.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[3] *Cf United States v. Schoenhut*, 576 F 2d 1010, 1020 (3d Cir 1978), *cert denied*, 439 U S 964 (1978), where the court held that the fact that two financial institutions had overlapping officers "is not enough to provide a basis for concluding that the corporations were identical" for purposes of establishing the coverage of conflict of interest laws respecting certain prohibited bank loans

[4] This conclusion is fortified by the restrictive interpretation of § 213's coverage applied by courts in related contexts *See, e g , United States v. Napier*, 861 F 2d 547, 549 (9th Cir 1988) ("Strict reading" applied to § 213 in holding that a state Commissioner of Financial Institutions could not be treated as a covered "examiner," notwithstanding government's argument that the commissioner was the functional equivalent of an examiner and that a narrow reading of the term would "eviscerate[]" the statute ) In so holding, the *Napier* court rejected the government's argument that the "general statutory purposes" underlying the statute justified a more expansive interpretation *Id* at 548-49