**UNITED STATES of America**

**v.**

**Ted BRISTOL.**

**UNITED STATES of America**

**v.**

**Douglas LANE et al.**

Crim. Nos. 71-H-287, 71-H-289.

United States District Court,
S. D. Texas,
Houston Division.

May 29, 1972.

Anthony J. P. Farris, U. S. Atty., Theo W. Pinson, III, Asst. U. S. Atty., Houston, Tex., for plaintiff.

William M. Schultz, Schultz & de Ybarrondo, Houston, Tex., for defendants Bristol and Hooper.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

In these two criminal actions defendants Bristol and Hooper who, as bank examiners, allegedly accepted a loan or gratuity from an officer of an examined bank seek to dismiss the indictments pursuant to Rule 12, Fed.R.Crim.P., on the basis that the transactions involved are not expressly prohibited by the applicable statute and that the language of the indictment impressibly broadens the scope of the statute. In the latter numbered action, defendant Hooper also alleges that the statute is inapplicable to him since he was a state appointed bank examiner and the statute applies only to federally appointed bank examiners.

■ The banking business, both federal and state, is unique to the private enterprise system, since occurrences within it are oftentimes magnified throughout other industries. It, therefore, is peculiarly affected with a public interest and is in essence quasi-public in nature. As a consequence of this unique character, it is subject to close supervision by legislatures, both federal and state. Accordingly, Congress has enacted a banking statute which contains stringent regulations enforced by both civil and criminal sanctions. The ultimate purpose of the criminal provisions is to protect innocent depositors by deterring bank officials from engaging in willful mismanagement and for engaging in culpable personal transactions to the detriment of the solvency and well being of the bank. One area of regulation which provides for criminal penalties is that precluding bank officers from offering a loan or gratuity to a bank examiner as well as the correlative transaction, the acceptance of a loan or gratuity by a bank examiner to make favorable reports on the financial conditions of a bank. Accordingly, 18 U.S.C. § 212 states that:

Whoever, being an officer, director or employee of a bank which is a member of the Federal Reserve System or the deposits of which are insured by the Federal Deposit Insurance Corporation, or of any National Agricultural Credit Corporation, or of any land bank, Federal land bank association or other institution subject to examination by a farm credit examiner, or of any small business investment company, makes or grants any loan or gratuity, to any examiner or assistant examiner who examines or has authority to examine such bank, corporation, or institution, shall be fined not more than $5,000 or imprisoned not more than one year, or both; and may be fined a further sum equal to the money so loaned or gratuity given.

The provisions of this section and section 218 of this title shall apply to all public examiners and assistant examiners who examine member banks of the Federal Reserve System or insured banks, or National Agricultural Credit Corporations, whether appointed by the Comptroller of the Currency, by the Board of Governors of the Federal Reserve System, by a Federal Reserve Agent, by a Federal Reserve bank or by the Federal Deposit Insur-

ance Corporation, or appointed or elected under the laws of any state; but shall not apply to private examiners or assistant examiners employed only by a clearing-house association or by the directors of a bank.

Conjunctively, 18 U.S.C. § 213 states that:

> Whoever, being an examiner or assistant examiner of member banks of the Federal Reserve System or banks the deposits of which are insured by the Federal Deposit Insurance Corporation, or a farm credit examiner or examiner of National Agricultural Credit Corporations, or an examiner of small business investment companies, accepts a loan or gratuity from any bank, corporation, association or organization examined by him or from any person connected therewith, shall be fined not more than $5,000 or imprisoned not more than one year, or both; and may be fined a further sum equal to the money so loaned or gratuity given, and shall be disqualified from holding office as such examiner.

The essential elements of the offense of accepting a loan or gratuity from an official of an examined state bank by a bank examiner as stated in the statute are (1) the Federal Deposit Insurance Corporation (FDIC) has insured the deposits of the bank; (2) the bank examiner examined the bank; and (3) the bank examiner received a loan or gratuity from the bank or an official of the bank.

In the first indictment, Criminal No. 71–H–287, it is alleged that Sharpstown State Bank, now defunct, is insured by the FDIC, that defendant Bristol was an FDIC examiner who examined the Sharpstown State Bank and that he accepted a loan or gratuity "from Frank W. Sharp, an officer and director of the Sharpstown State Bank, through Oak Forest Investment Company, a corporation controlled by the said Frank W. Sharp."

In the second indictment, Criminal No. 71–H–289, it is alleged that Sharpstown State Bank is insured by the FDIC, that defendant Hooper was a state bank examiner who examined the Sharpstown State Bank and that he accepted a loan or gratuity "from Douglas Lane and Herman Nelms, officers of Sharpstown State Bank, through D. N. Lane Enterprises, Inc., a corporation controlled by the said officers." A second count to this indictment alleges that a second loan or gratuity was accepted "from Frank W. Sharp, an officer and director of the Sharpstown State Bank, through Oak Forest Investment Company, a corporation controlled by the said Frank W. Sharp."

■■ It is fundamental that criminal statutes must be construed strictly. The applicable rule dictates that "[t]he fact that a particular activity may be within the same general classification and policy of those covered does not necessarily bring it within the ambit of the criminal prohibition." United States v. Boston and Maine R. R., 380 U.S. 157, 160, 85 S.Ct. 868, 870, 13 L.Ed.2d 728 (1965). However, this rule of construction

> does not require that such statute be strained or distorted in order to exclude conduct clearly intended to be within its scope. Where the general purpose of legislation is manifest and subserved by giving words their ordinary meaning, the rule that criminal statutes are to be strictly construed is inapplicable. Although provisions of criminal statutes should be confined to their literal terms, even penal provisions of statutes must be given fair meaning in accord with the evident intent of Congress. Though penal laws are to be strictly construed, they are not to be construed so strictly as to defeat the obvious intention of Congress. The rule of common sense must be applied to the construction of criminal statutes, the same as others.

Ryan v. United States, 278 F.2d 836, 838 (9th Cir. 1960) (citations omitted). *See*

1 Michie on Banks and Banking § 206 (1956). The query which emerges from this statement of the law is: What is the proper scope of 18 U.S.C. § 213? It is clearly a statute which deals with a prohibition against bank examiners accepting loans or gratuities from banks examined or officials connected therewith. The statute has its roots in a policy which acknowledges the public interest in the banking institutions and the desire to protect private investors whose deposits are protected or insured by the FDIC. The primary aim of the statute is to preclude bank examiners from accepting loans or gratuities from bank officials in return for making favorable reports on the financial condition of the banks. *See* H.Rep. No. 69, 63rd Cong., 1st Sess. 72 (1913).

In somewhat similar criminal prosecutions, courts have been prone to give criminal statutes a reasonable interpretation. In cases of misapplication of bank funds, the criminal provision was construed in such a manner so as not to require that bank officers derive a benefit from the illegal transaction. United States v. Lee, 12 F. 816 (C.C.N.D.N.Y. 1882). Similarly, another penal provision has been construed to apply criminal liability to bank officers for false book entries, even though the officer in question did not personally make the book entry. United States v. Giles, 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493 (1937); Morse v. United States, 174 F. 539 (2d Cir.), cert. denied, 215 U.S. 605, 30 S.Ct. 406, 54 L.Ed. 346 (1909). *See* 1 Michie on Banks and Banking §§ 241–63 (1956).

■ In the instant actions the government contends that the indictments involved herein specify, as the statute requires, that the loans or gratuities came from bank officials. The indictments then set forth the exact manner in which the funds were allegedly made available to the defendants. Specifically, the government alleges that the loans or gratuities were funneled through the two corporate entities, D. N. Lane Enterprises, Inc. and Oak Forest Investment Company, which were conduits wholly owned and controlled by officials of Sharpstown State Bank. It is alleged that these corporations were mere subterfuges used as instruments to carry out deliberate criminal acts or to escape liability for such acts. *See* 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 41, at 166 (1963 Rev. Ed.). It is apparent to the Court that to hold that the factual situations involved herein are not within the scope of the statutory prohibition would be contrary to the obvious intention of Congress and would, in effect, render the statute meaningless. It, therefore, is the opinion of this Court that the indictments as presently drawn set forth viable causes of action.

■ Defendant Hooper next contends that the statute, 18 U.S.C. § 213, does not apply to state bank examiners. This penal statute was originally enacted in 1913 as section 22 of the Federal Reserve Act. The language of that section was equivocal as to whether or not its sanctions applied to state bank examiners. However, in 1935 section 22 of the Act was amended by the Banking Act of 1935 to make it clear that it applied to all public examiners, regardless of the source from which such examiner receives his appointment. This criminal offense of a bank examiner accepting a loan or gratuity and the related offense of a bank officer offering a loan or gratuity were originally codified as 12 U.S.C. § 593. Later the two offenses were severed for reasons of statutory convenience and clarity and re-codified as 18 U.S.C. §§ 217 and 218. Section 217 indicated that both section 217 and section 218 applied to all public examiners, whether appointed by state or federal authority. Thereafter, these statutory provisions were renumbered 212 and 213. However, the former section, section 212, inadvertently continued to refer to the latter section, section 213, as section 218 in setting forth the statute's scope of coverage. Close scrutiny of these statutory sections in their proper

context convinces this Court that the contention of defendant Hooper is wholly without substance. The readily ascertainable intent of Congress was to include all public bank examiners within the statute's prohibition, notwithstanding the minor clerical error created in recodifying the statute.[1]

Accordingly, defendants' contentions are concluded to be without merit. The motions to dismiss the indictments in both causes are in all respects denied. It is so ordered. The clerk will notify counsel.

---

1. *See* United States v. Thorndal, Crim. No. 548 (D.N.D. Nov. 12, 1970).