**UNITED STATES of America, Plaintiff,**

v.

**Gary R. WALKER, Defendant.**

No. 90–10088–01.

United States District Court, D. Kansas.

Jan. 25, 1991.

Lee Thompson, U.S. Atty., Wichita, Kan., for plaintiff.

Jerry Griffith, Derby, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court upon Gary R. Walker's motion to dismiss, pursuant to Fed.R.Crim.P. 12, the information filed against him upon the basis that the information fails to charge an offense pursuant to 18 U.S.C. § 212, which prohibits an employee of a bank from "making or granting" a loan to a bank examiner who examines or has authority to examine such bank. The Government opposes the dismissal. The Government contends that if the court adopts Walker's interpretation of the statute, the court "would effectively eviscerate the statute and would severely limit any future prosecutions." The Government contends that Walker's conduct constituted "a clear violation of 18 U.S.C. § 212." A thorough understanding of the facts is necessary to understand the posture of this case.

The information, filed on November 6, 1990, charges as follows:

### COUNT I

On or about October 4, 1986, in the District of Kansas, GARY R. WALKER, defendant herein, being an officer or employee, that is, President of the Sylvia State Bank, Sylvia, Kansas, a bank the deposits of which were insured by the Federal Deposit Insurance Corporation, knowingly made or granted a loan to Frank Waite, a bank examiner for the State of Kansas who examined or had the authority to examine the Sylvia State Bank, in that he obtained a loan in the amount of $10,000.00 for Frank Waite from F.J. Farmer, a customer of the Sylvia State Bank, in violation of 18 U.S.C. 212.

### COUNT II

On or about November 5, 1987, in the District of Kansas, GARY R. WALKER, defendant herein, being an officer or employee, that is President of the Sylvia State Bank, Sylvia, Kansas, a bank the deposits of which were insured by the Federal Deposit Insurance Corporation, knowingly made or granted a loan to Rebecca H. Emery, a bank examiner for the State of Kansas who examined or had the authority to examine the Sylvia State Bank, in that he obtained a loan in the amount of $7,000.00 for Rebecca H. Emery from F.J. Farmer, a customer of

the Sylvia State Bank, in violation of 18 U.S.C. 212.

18 U.S.C. § 212 provides in pertinent part: [1]

Whoever, being an officer, director or employee of a bank which is a member of the Federal Reserve System or the deposits of which are insured by the Federal Deposit Insurance Corporation ..., makes or grants any loan or gratuity, to any examiner or assistant examiner who examines or has authority to examine such bank, corporation, or institution, shall be fined not more than $5,000 or imprisoned not more than one year, or both; and may be fined a further sum equal to the money so loaned or gratuity given ...

The counterpart to 18 U.S.C. § 212 is 18 U.S.C. § 213. Section 213 makes it a crime for a bank examiner to accept a loan or gratuity from any bank examined by him. *See United States v. Napier*, 861 F.2d 547 (9th Cir.1988).

In the case at bar, the Government is prepared to present the following evidence at trial.[2] From 1974 until approximately September 8, 1988, Gary R. Walker was the president of the Sylvia State Bank in Sylvia, Kansas. On September 8, 1988, Sylvia State Bank was declared insolvent and the FDIC was appointed as receiver. Frederick James Farmer, Jr. was a customer of the Sylvia State Bank prior to 1986 and continued doing business with the bank until September 8, 1988.

Frank R. Waite was an examiner of the State of Kansas, Department of Banking, and was the individual in charge of the Wichita field office which included the Sylvia State Bank as a bank situated within the territory covered by the field office. Waite was authorized to, and in fact, served as the examiner in charge of the Sylvia State Bank's last two examinations. The examinations occurred on October 15, 1985 and April 14, 1987. Rebecca Emery was an examiner for the State of Kansas, Department of Banking, and was also assigned to the Wichita field office. Her supervisor was Frank Waite and she was authorized to examine the bank and did examine the Sylvia State Bank on a least one occasion.

Prior to October 4, 1986, Frank Waite contacted Gary Walker and inquired of him if he knew where he could borrow some money. Walker considered Waite to be a good friend, and knew that he was a state bank examiner and that he had previously examined the Sylvia State Bank. Walker later contacted F.J. Farmer and arranged for Farmer to lend money to Frank Waite. Although Farmer never met Frank Waite, nor was he aware of Waite's occupation, Farmer agreed to loan him money.

On October 4, 1986, Waite met Gary Walker at the Sylvia State Bank and executed an unsecured note to Farmer in the principal amount of $10,000 with interest at 13 percent and payable at the rate of $400 monthly. The loan was funded from Farmer's deposit account. Loan documents similar to those prepared for every loan at the Sylvia State Bank were created and remained at the bank. Sylvia State Bank received a $.50 per payment handling fee. Prior to receiving the loan, Waite provided Gary Walker a personal financial statement dated September 28, 1986, in which he clearly revealed that he was a senior examiner for the state banking department with 36 years of experience. Farmer indicated that he never saw any of the loan documents nor the financial statement prepared by Frank Waite.

Frank Waite served as the state's examiner-in-charge of the April 14, 1987, examination of the Sylvia State Bank. The examination commenced on April 15, 1987, and concluded on April 22, 1987. Waite assigned a uniform bank rating of 2–2–2–3–½. The examination report prepared by Waite reflected only modest classifications and there were no violations of law, rules or regulations or concentrations for credit scheduled. The official Officer's Question-

---

**1.** 18 U.S.C. § 212 was amended in 1989. The 1989 amendments do not affect the court's analysis of this issue.

**2.** At oral argument, Walker agreed, for purposes of this motion, that the Government's statement of facts was accurate.

naire signed by Gary Walker on April 16, 1987, reflected an answer of "none" to the question "list all extensions of credit held by a bank which are direct or indirect liabilities of any bank examiner or assistant examiner who examines or has authority to examine this bank."

Prior to November 5, 1987, Rebecca Emery arrived at the Sylvia State Bank and discussed her need for a loan with Gary Walker. Just as he did in the case of Frank Waite, Walker agreed to obtain money for Rebecca Emery. Walker contacted F.J. Farmer who agreed to loan Emery $7,000. Karen Walker, Walker's wife and an employee of the Sylvia State Bank, considered Emery to be a good friend and she and Gary Walker were aware that Rebecca Emery was a state bank examiner who had previously participated in an examination of the Sylvia State Bank.

Farmer did not meet Emery, nor was he aware of her occupation. Emery executed an unsecured promissory noted dated November 5, 1987, in the amount of $7,000 with interest at 13 percent. Payments were scheduled at $235 per month with a final maturity of November 5, 1990. Funding for the loan came from Farmer's deposit account at the Sylvia State Bank. Incidental to this transaction, an unsigned loan application form was completed which showed that Emery was a state bank examiner and that her supervisor was Frank Waite. All documents evidencing Farmer's loan to Emery were kept at the Sylvia State Bank. The bank served as the escrow agent for the payments and received a $1.00 per payment handling fee. Farmer never saw any of the documents concerning this loan.

■ Criminal statutes must be strictly construed, and uncertainty concerning the ambit of criminal statutes should be resolved in favor of leniency. *See United States v. Kozminski,* 487 U.S. 931, 952, 108 S.Ct. 2751, 2764, 108 L.Ed.2d 788 (1988). The tenth circuit has also recognized, however, that "the rule of strict construction does not require that penal statutes be given the 'narrowest meaning' that the words of the statue will allow." *U.S. v.*

*Cardenas,* 864 F.2d 1528, 1535 (10th Cir. 1989). *See Moskal v. United States,* —— U.S. ——, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990).

■ An indictment or information is insufficient if it fails to allege an offense. Generally, "an indictment is sufficient if (1) it contains the elements of the offense and apprises the defendant of the charges he must meet; and (2) the defendant would be protected against double jeopardy by a judgment on the indictment." *United States of America v. Daily,* 921 F.2d 994 (10th Cir.1990). The elements of a violation of 18 U.S.C. § 212 relevant to this case are: (1) An officer, director of a bank which is a member of the Federal Reserve System or the deposits of which are insured by the FDIC; (2) made or granted any loan or gratuity; (3) to any examiner or assistant examiner who examines or has authority to examine such bank. In the case at bar, the information satisfies the first and third elements of the crime.

■ The sole issue presented is whether Walker violated the second element: whether he made or granted any loan or gratuity to the bank examiners. If Walker did not make or grant any loan or gratuity to the bank examiners within the meaning of statute, then the indictment fails to state an offense. Walker contends that 18 U.S.C. § 212 only prevents him from making a loan to a bank examiner, not "from assisting a bank examiner in finding a third party who would make a loan to him. It specifically prevents a person in the defendant's position from making a loan to a bank examiner."

Sections 212 and 213 of title 18 have not been the subject of much discussion in reported cases. In fact, the parties have identified only one case, *United States v. Bristol,* 343 F.Supp. 1262 (S.D.Texas 1972), *aff'd* 473 F.2d 439 (5th Cir.1973), which provides any meaningful discussion of those sections. The majority of the parties' arguments turn primarily on their respective interpretations of that case and the implications of this court's decision of cases in the future.

Unfortunately, the court's research of this issue has not been much more fruitful than that of the parties'. While the court did find one annotation directly on point, that annotation consisted solely of a discussion of the *Bristol* case. *See* Annotation, *Construction and Application of 18 U.S. C.S. § 213 Punishing Acceptance of Loan or Gratuity by Bank Examiner*, 19 A.L.R. Fed. 340 (1974). The court has, however, obtained a portion of the legislative history of the predecessor to § 212. In 1913, Congress was concerned with potential for abuses in the banking industry that potentially undermined the financial integrity of the banking community. The Federal Reserve Act instituted a comprehensive series of changes which were made to address the perceived shortcomings existing within the banking industry. The statute preventing the making or granting of a loan or gratuity to a bank examiner is a prime example of Congress' desire to protect the financial integrity of banks. As the district court in *Bristol* concluded, the primary aim of the statute was to preclude bank examiners from accepting loans or gratuities in return for making favorable financial reports of the banks. 343 F.Supp. at 1265; *see* H.Rep. No. 69, 63rd Cong. 1st Sess. 72, at 72 (1913) (practice of paying of fees to bank examiners to insure a favorable report is "opposed to public welfare and to sound banking, besides being wholly at variance with fundamental principles of honorable personal conduct.").

In *Bristol*, the defendants, who were bank examiners, sought to dismiss the indictments on the basis that the their actions were not expressly prohibited by 18 U.S.C. § 213 and that the indictment impermissibly broadened the scope of the statute. The indictment against Bristol alleged that the then defunct Sharpstown State Bank, which was insured by the FDIC, was examined by Bristol and that he "accepted a loan or gratuity from Frank W. Sharp, an officer and director of the Sharpstown State Bank, through Oak Forest Investment Company, a corporation controlled by the said Frank W. Sharp." 343 F.Supp. at 1264. The indictment against Hooper, a state bank examiner, alleged that he had examined the Sharpstown State Bank and that he accepted a loan or gratuity "from Douglas Lane and Herman Nelms, officers of Sharpstown State Bank, through D.N. Lane Enterprises, Inc., a corporation controlled by the said officers." A second count in that indictment alleged that Hooper had accepted a loan from a bank officer through the Oak Forest Investment Company. *Id.* Apparently, money was loaned to the defendants through a corporation controlled by a bank official. Bristol apparently repaid $6,000 directly to Sharp.

After recognizing the rule that criminal statutes must be construed strictly, the court also noted that common sense must be applied to the construction of criminal statutes and that a statute must not be construed so strictly as to defeat the obvious intention of Congress. After reviewing the legislative history of the statute, the district court concluded that the indictments set forth viable causes of action. The court commented:

> It is alleged that these corporations were mere subterfuges used as instruments to carry out deliberate criminal acts or to escape liability for such acts. (Citations omitted) It is apparent to the Court that to hold that the factual situations involved herein are not within the scope of the statutory prohibition would be contrary to the obvious intention of Congress and would, in effect, render the statute meaningless.

343 F.Supp. at 1265.

On appeal, Bristol argued that the indictment "was fatally defective because the loan, although perhaps *arranged* by Sharp, was not *made* or *granted* by him or his bank, but instead was made by a legitimate non-banking corporation." 473 F.2d at 439. The court of appeals disagreed. After reviewing the same rules of statutory construction used by the district court, the court concluded:

> Congress, in passing section 213 and its companion section 212 (which prohibits bank officers from making a section 213 loan), intended to proscribe certain financial transactions which would lead to a bank examiner carrying out his duties

with less than total, unbiased objectivity. With the intent of Congress evident from the face of the statue, a construction which would allow a bank officer to circumvent that intent simply by channeling a loan through *a controlled* shell corporation is untenable. Thus, we hold that the facts alleged in the indictment concerning the mechanics of the loan, if proved, would constitute a violation of 18 U.S.C.A. § 213. (emphasis added)

473 F.2d at 442.

While *Bristol* could be generally viewed as supportive of the Government's position, the facts of that case are distinguishable from the case at bar. In *Bristol,* the loan was channeled through a controlled shell corporation. Stripped of its corporate facade, the loan was made or granted by a bank officer; the money was controlled by the bank officer. If the facts of the case at bar were similar, the court might be persuaded to pierce through the corporate shell and to find a violation of the statute. *See United States v. Schoenhut,* 576 F.2d 1010, 1020 (3rd Cir.1978) (discussing *Bristol* ).

The facts of this case differ in one key respect: The money loaned to the bank examiners was not subject to the control of Walker or Sylvia State Bank. The money loaned belonged to F.J. Farmer, who was merely a customer of Sylvia State Bank. While it is true that Walker arranged the loans, he did not "make or grant" the loans, which is the action proscribed by § 212. While it is evident that Congress was generally concerned with prohibiting transactions such as those Walker participated in, the statute simply does not proscribe his actions. The clearest indicator of congressional intent are the words chosen. Congress could have easily written the statute to specifically prohibit Walker's actions.

The court concludes that the information fails to charge a violation of 18 U.S.C. § 212. Gary R. Walker did not "make or grant any loan" within the meaning of 18 U.S.C. § 212.

IT IS THEREFORE ORDERED that Gary R. Walker's motion to dismiss the information filed in this case as to Count I and Count II (Dk. # 9) is granted.