UNITED STATES of America, Plaintiff,

v.

Frank R. WAITT, Defendant.

No. 90–10090–01.

United States District Court,
D. Kansas.

March 11, 1991.

Lee Thompson, U.S. Atty., Wichita, Kan., for U.S.

Gerald Joseph Domitrovic, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court upon Frank R. Waitt's motion to dismiss, pursuant to Fed.R.Crim.P. 12, the information filed against him upon the basis that the information fails to charge an offense pursuant to 18 U.S.C. § 213, which makes it a crime for a bank examiner to accept a loan or gratuity from any bank examined by him. Frank Waitt was a bank examiner. On October 4, 1986, Waitt received a $10,000 loan from F.J. Farmer, a customer of the Sylvia State Bank. Waitt had examined Sylvia State Bank on at least two prior occasions. The Government contends that Waitt's acceptance of a loan from a customer of the Sylvia State Bank was a clear violation of the statute and opposes the dismissal of the information.

On January 25, 1991, in *United States v. Walker,* 755 F.Supp. 972 (D.Kan.1991), this court granted Gary R. Walker's motion to dismiss on the basis that the information failed to charge an offense pursuant to 18 U.S.C. § 212, which prohibits an employee of a bank from making or granting a loan to a bank examiner who examines or has authority to examine such bank. *Walker* is the companion case to the case at bar.[1]

These are the facts that the Government is prepared to introduce at trial: Walker, former president of the Sylvia State Bank, allegedly set up the loan from Farmer, a bank customer, to Waitt. Farmer did not know Waitt. The loan was executed using forms similar to those prepared by Sylvia

---

**1.** The Government alleges basically the same facts in this case as those it alleged in *Walker.* In this case, Waitt's version of the facts, while not as thorough as the Government's recitation, is consistent with the Government's version.

State Bank for all loans at the bank. The loan documents were created and remained at the Sylvia State Bank. The loan was unsecured and in the principal amount of $10,000 with 13 percent interest. Repayment was at the rate of $400 per month. The Sylvia State Bank acted as the escrow agent for the payments and received a fifty cent per-payment handling fee. Farmer apparently never met Waitt, nor did he see any of the loan documents.

In April of 1987, Waitt served as the examiner-in-charge of the Sylvia State Bank. Waitt assigned the Sylvia State Bank a uniform bank rating of 2–2–2–3–½. Waitt's report on the Sylvia State Bank was generally favorable. On April 16, 1987, Walker signed the official officer's questionnaire. To the question "List all extensions of credit held by a bank which are direct or indirect liabilities of any bank examiner or assistant examiner who examines or has authority to examine this bank", Walker answered "none." Approximately 17 months after Waitt's last examination, the Sylvia State Bank was declared insolvent.

The information, filed on November 6, 1990, charges:

### COUNT I

On or about October 4, 1986, in the District of Kansas,

### FRANK R. WAITT,

defendant herein, being an examiner for the State of Kansas who had examined or had authority to examine the Sylvia State Bank, Sylvia, Kansas, a bank the deposits of which were insured by the Federal Deposit Insurance Corporation, knowingly accepted a loan or gratuity from the Sylvia State Bank or a person connected with Sylvia State Bank, in that

Frank R. Waitt accepted a loan or gratuity in the amount of $10,000.00 from F.J. Farmer, a customer of the Sylvia State Bank, in violation of 18 U.S.C. 213.

Title 18, United States Code, Section 213 provides in pertinent part: [2]

Whoever, being an examiner or assistant examiner or member banks of the Federal Reserve System or financial institutions the deposits of which are insured by the Federal Deposit Insurance Corporation ..., accepts a loan or gratuity from any bank, corporation, association or organization examined by him or any person connected therewith, shall be fined not more than $5,000 or imprisonment not more than one year, or both; and may be fined a further sum equal to the money so loaned or gratuity given, and shall be disqualified from holding office as such examiner.

In *United States v. Napier,* 861 F.2d 547, 548 (9th Cir.1988), the Ninth Circuit considered 18 U.S.C. § 213 and concluded: "In our view the statute is clear on its face: it prohibits a bank examiner from accepting a loan from a bank or any person connected with a bank that has been examined by him." [3]

■ It is well settled that criminal statutes must be strictly construed, and uncertainty concerning the ambit of criminal statutes should be resolved in favor of leniency. *See United States v. Kozminski,* 487 U.S. 931, 952, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988); *Federal Communications Comm'n v. American Broadcasting Co.,* 347 U.S. 284, 296, 74 S.Ct. 593, 98 L.Ed. 699 (1954). A person cannot be subject to a penalty unless the words of the statute plainly impose it. *Keppel v. Tiffin Savings Bank,* 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790 (1905). "This principle is founded on the sound policy that before

---

**2.** On August 9, 1989, 18 U.S.C. § 213 was amended. P.L. 101–73, Title IX, Subtitle F, § 962(a)(2), 103 Stat. 502 substituted "financial institutions the deposits of which" for "banks the deposits of which." This amendment does not affect the court's analysis in this case.

**3.** The issue in *Napier* was whether Napier's conviction could stand where there was no evidence that he had accepted a loan from the president of a bank which *he had examined.* The Ninth Circuit reversed his conviction. While there was evidence that Napier had authority to examine the bank from which he received the loan, there was no evidence that he had actually examined the bank.

criminal penalties can be imposed 'fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *Napier*, 861 F.2d at 548–549 (quoting *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931) (Holmes, J.)). The Tenth Circuit has also recognized, however, that "the rule of strict construction does not require that penal statutes be given the 'narrowest meaning' that the words of the statute will allow." *U.S. v. Cardenas*, 864 F.2d 1528, 1535 (10th Cir.), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). *See Moskal v. United States*, — U.S. ——, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990).

■ An indictment or information is insufficient if it fails to allege an offense. Generally, "an indictment is sufficient if (1) it contains the elements of the offense and apprises the defendant of the charges he must meet; and (2) the defendant would be protected against double jeopardy by a judgment on the indictment." *United States of America v. Daily*, 921 F.2d 994 (10th Cir.1990). The elements of a violation of 18 U.S.C. § 213 relevant to this case are: (1) A bank examiner of a bank insured by the Federal Deposit Insurance Corporation; (2) accepts a loan or gratuity; (3) from a bank, corporation, association, or organization, or any person connected therewith; (4) he has examined.

The issue in this case is whether Waitt accepted a loan or gratuity from Sylvia State Bank or any person connected with the bank within the meaning of 18 U.S.C. § 213. If Farmer, the bank customer who made the loan to Waitt, was not the bank or a "person connected therewith," the information fails to state an offense.

The Government contends, as it did in *Walker*, that Waitt's acceptance of a loan from a customer of the Sylvia State Bank was an act proscribed under federal law. The Government contends that if the court concludes that Waitt's acceptance of the loan from a customer of the bank is not a crime under 18 U.S.C. § 213, then the statute will be eviscerated: Banks and bank examiners can easily circumvent federal law by not directly making/accepting loans or gratuities.

As the court noted in *Walker*, sections 212 and 213 of title 18 have not been the subject of much discussion in reported cases. Both the defendant and the Government rely on *United States v. Bristol*, 343 F.Supp. 1262 (S.D.Texas 1972), *aff'd* 473 F.2d 439 (5th Cir.1973), in support of their respective positions.

In *Bristol*, the defendants, who were bank examiners, sought to dismiss the indictments on the basis that their actions were not expressly prohibited by 18 U.S.C. § 213 and that the indictment impermissibly broadened the scope of the statute. The indictment against Bristol alleged that the then defunct Sharpstown State Bank, which was insured by the FDIC, was examined by Bristol and that he "accepted a loan or gratuity from Frank W. Sharp, an officer and director of the Sharpstown State Bank, through Oak Forest Investment Company, a corporation controlled by the said Frank W. Sharp." 343 F.Supp. at 1264. The indictment against Hooper, a state bank examiner, alleged that he had examined the Sharpstown State Bank and that he accepted a loan or gratuity "from Douglas Lane and Herman Nelms, officers of Sharpstown State Bank, through D.N. Lane Enterprises, Inc., a corporation controlled by the said officers." A second count in that indictment alleged that Hooper had accepted a loan from a bank officer through the Oak Forest Investment Company. *Id.* Apparently, money was loaned to the defendants through a corporation controlled by a bank official. Bristol apparently repaid $6,000 directly to Sharp.

After recognizing the rule that criminal statutes must be construed strictly, the court also noted that common sense must be applied to the construction of criminal statutes and that a statute must not be construed so strictly as to defeat the obvious intention of Congress. After reviewing the legislative history of the statute, the district court concluded that the indictments set forth viable causes of action. The court commented:

It is alleged that these corporations were mere subterfuges used as instruments to carry out deliberate criminal acts or to escape liability for such acts. (Citations omitted) It is apparent to the Court that to hold that the factual situations involved herein are not within the scope of the statutory prohibition would be contrary to the obvious intention of Congress and would, in effect, render the statute meaningless.

343 F.Supp. at 1265.

On appeal, Bristol argued that the indictment "was fatally defective because the loan, although perhaps *arranged* by Sharp, was not *made* or *granted* by him or his bank, but instead was made by a legitimate non-banking corporation." 473 F.2d at 439. The court of appeals disagreed. After reviewing the same rules of statutory construction used by the district court, the court concluded:

Congress, in passing section 213 and its companion section 212 (which prohibits bank officers from making a section 213 loan), intended to proscribe certain financial transactions which would lead to a bank examiner carrying out his duties with less than total, unbiased objectivity. With the intent of Congress evident from the face of the statute, a construction which would allow a bank officer to circumvent that intent simply by channeling a loan through *a controlled* shell corporation is untenable. Thus, we hold that the facts alleged in the indictment concerning the mechanics of the loan, if proved, would constitute a violation of 18 U.S.C.A. § 213. (emphasis added)

473 F.2d at 442.

As in *Walker*, while *Bristol* could be generally viewed as supportive of the Government's position, the facts of that case are distinguishable from the case at bar. In *Bristol*, the loan was channeled through a controlled shell corporation. Stripped of its corporate facade, the loan was made or granted by a bank officer; the money was controlled by the bank officer. In this case, the court finds the fact that the bank did not control the decision of whether or not to make the loan is signifi-cant. The money loaned to Waitt belonged to Farmer. The bank did not compel Farmer to make the loan, nor in any legal sense was Farmer the bank's agent.

The Government notes that the language of 18 U.S.C. § 212 and 18 U.S.C. § 213 does not track identically. The Government urges the court to construe the phrase "any person connected therewith" found in § 213 to include a bank customer. In its brief, the Government states: "[I]t is the government's position that F.J. Farmer, a long-time customer of the Sylvia State Bank, is sufficiently connected to come within the ambit of this language." In this same vein, the Government contends that the loan to Waitt came from a source "closely tied" to the bank and that the court should find the transaction to be a violation of § 213.

While the sections 212 and 213 are not identical, the court is unconvinced that the phrase "person connected therewith" was intended to encompass a mere customer of the bank. Such interpretation would not lawfully permit the defendant to borrow money from any lending institution that may directly or even indirectly be a customer of defendant's examined bank for it would constitute a crime. The Government has not identified any legislative history demonstrating clear Congressional intent to prohibit a bank customer from making a loan to bank examiner. Nor has the Government attempted to define the term "connected" or to interpret the phrase in its logical context. "Connected" means joined, united by junction, by an intervening substance or medium, by dependence or relation. *Black's Law Dictionary* 302 (6th ed. 1990). In the context of this statute, the phrase "connected therewith" was intended to prohibit individuals mentioned in § 212, i.e. officers, directors or employees of the bank, from making loans or gratuities to bank examiners. Those individuals, unlike a mere bank customer, would presumably enjoy personal pecuniary gains from making a loan or gratuity (beyond interest on the loan) to a bank examiner.

■ In short, the Government's interpretation stretches 18 U.S.C. § 213 beyond the

breaking point and the language of the statute. *See Walker*, 755 F.Supp. at 975–976. The court is bound by the plain language of the statute. The court recognizes and understands the Government's arguments, but in the final analysis, it is not for this court to rewrite the statute for Congress. In this court's opinion, if Congress had intended 18 U.S.C. § 213 to prohibit a customer of a bank from making a loan to a bank examiner, it would have done so in an unambiguous fashion.

The court concludes that the information fails to charge a violation of 18 U.S.C. § 213. Waitt did not accept a loan or gratuity from a bank or a person connected with the bank within the meaning of 18 U.S.C. § 213.

IT IS THEREFORE ORDERED that Frank R. Waitt's motion to dismiss the information filed in this case (Dk. 13) is granted.